UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MUSTAFA MUHAMMAD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1420** |
| **CORNEL H. HUBERT, WARDEN** | **SECTION "R"(2)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Mustafa Muhammad, is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] He was charged in a bill of information in Jefferson Parish on April 29, 1998, with 17 counts of access device fraud.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Lieutenant Glenn Davis, the sole trial witness and a 31-year Jefferson Parish Sheriff's Office employee, was assigned to the New Orleans International Airport. On April 7, 1998, he was in charge of a unit monitoring incoming and outgoing flights from drug-source cities. That morning he received a call from Officer Beal, who was with the Dallas/Ft. Worth Airport unit, alerting him that two individuals were arriving on American Airlines flight 2036. The two men were using the names "George Fisher" and "Christopher Greene." They were flying from Los Angeles, a drug-source city. Each man paid $694 for a one-way ticket. They gave a fictitious telephone callback number. After receiving the information, Lieutenant Davis and Agent Brocato watched passengers arrive from that flight. Although Lieutenant Davis did not have a description of the men, he noticed two men acting suspiciously when they disembarked. He later discovered these two men were flying under the names of "Greene" and "Fisher."
> Lieutenant Davis saw "Greene" walk across the concourse and stand against the wall across from the area where passengers were disembarking. A few minutes later, defendant passed "Greene" and walked up the concourse toward the lobby. "Greene" then walked behind defendant, keeping at a distance of approximately five feet. The two men never made eye contact, nor did they give any indication they knew each other. Nevertheless, it was obvious to Lieutenant Davis the men were together.
> After they reached the main ticket lobby and the escalators, defendant stopped and spoke to "Greene." They walked together through the lobby while they conversed. As they walked, defendant glanced nervously over his shoulder, appearing to be looking to see if someone were following him. When the men

---

[2] Rec. Doc. No. 1, Petition.

[3] St. Rec. Vol. 1 of 7, Bill of Information, 4/29/98.

2

passed the United Airlines ticket counter, Lieutenant Davis approached defendant, and Agent Brocato approached "Greene."

Lieutenant Davis showed defendant his police photographic identification and asked the defendant if the officer could speak to him for a moment. Defendant "readily agreed." The officer first asked defendant where the flight originated and defendant responded it was from Los Angeles. Lieutenant Davis then asked defendant if he had a ticket. Defendant presented his ticket folder to the officer and his hands trembled.

Lieutenant Davis noticed the ticket was in the name of "George Fisher" and that it was purchased with a credit card. He asked defendant if he purchased the ticket in this fashion. Defendant was "very, very nervous."

Defendant asked, "Is there a problem with the ticket? If so, I'll pay you for the ticket now." He attempted to hand the officer several hundred-dollar bills as payment. The officer told him that he was unaware of any problem with the ticket, returned his ticket to him, and asked him if he had any identification. The defendant said he had none, but shortly afterward, he did and produced a New Jersey driver's license in the name of "George Fisher," bearing defendant's photograph. The date of birth on the license was January 1, 1960.

Lieutenant Davis asked defendant his date of birth and defendant responded he was born on a different date - - April 1, 1960. The officer asked defendant if he was born on April Fool's Day and defendant agreed, stating he was kidded about that fact.

Next, the officer asked defendant for his address. Defendant's response did not match the address on the driver's license. Lieutenant Davis asked defendant if he would accompany the officer to the airport office and defendant agreed. When they arrived, Lieutenant Davis asked defendant if his real name was "George Fisher." Defendant told him his real name was "Hassan Muhammad." He told the officer he purchased the driver's license and the credit card, used to purchase the tickets, in Los Angeles. Defendant was then, arrested by Lieutenant Davis who advised him of his constitutional rights.

The officer conducted a search incidental to the arrest. He discovered a second driver's license in defendant's billfold - - a Pennsylvania license with defendant's photograph, in the name of "George Fisher." The birth date on the Pennsylvania license was April 1, 1958, different from the other two dates.

Defendant presented the officer with the MasterCard used to purchase the two tickets. The MasterCard number matched the number on the receipt for "Green's" and "Fisher's" plane tickets.

Lieutenant Davis also found a Discover "swipe card" or "fraud card." Such a card has no embossing on the front; it is used at such places as an ATM

machine, where no identification is required. This card had a valid account number.

Defendant sat in front of the officer's desk at this time. Noticing a bulge in defendant's jacket pocket, Lieutenant Davis asked one of the other detectives to examine the bulge. The detective retrieved a beige cloth bag from the pocket that contained a stack of 15 Visa and MasterCard credit cards. Each card was in the name of "George Fisher." Each had a yellow sticker attached, with numbers indicating the expiration dates and the account balances. Lieutenant Davis determined, from his investigation, these were valid account numbers, the numbers had not been issued to "George Fisher," and defendant did not have authorization to use these numbers. The officer also determined the cards were manufactured with a credit card press in Los Angeles by defendant and his associates. The prosecutor asked the officer if defendant told him that he, defendant, manufactured those cards. The officer answered that defendant told the Secret Service Officer in Lieutenant Davis's presence that defendant was there when they were manufactured. The cards were not issued by the respective companies; they were made by defendant and his associates.

During cross-examination, Lieutenant Davis testified he did not know whose accounts these were. Defense counsel asked him, "And you can't say to this jury that they did not give him authorization, can you?" The officer replied, "No. Sir."

State Record Volume 1 of 7, Fifth Circuit Opinion, 2000-KA-1239, p. 2-5, February 14, 2001; State v. Muhammad, 786 So.2d 985 (La. App. 5th Cir. 2001) (unpub.) (Table).

Muhammad was tried by a jury and found guilty on each of the 17 counts on March 18, 1999.[4] The state trial court sentenced him on April 9, 1999, to serve concurrent two-year prison sentences on each count, except that the two-year sentence on Count 17 was to run consecutively to the other sentences.[5] At the same hearing, the

---

[4]St. Rec. Vol. 1 of 7, Trial Minutes (2 pages), 3/18/99; Jury Verdict (9 pages), 3/18/99.

[5]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/9/99.

4

trial court denied Muhammad's motion for a new trial and to reconsider the sentence.[6] The State also filed a multiple offender bill charging Muhammad as a third offender.[7]

On August 9, 1999, the state trial court determined Muhammad to be a fourth offender, based on the evidence presented, and resentenced him on Count One to serve a life sentence, consecutive to the sentences on the other counts and without benefit of parole, probation or suspension of sentence.[8]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Muhammad raised four assignments of error:[9] (1) The trial court erred in denying the motion to suppress evidence and statements. (2) The trial court erred in allowing the introduction of "other crimes" evidence at trial without proper notice. (3) The evidence was insufficient to support the conviction. (4) The State failed to prove his habitual offender status because of inappropriate predicate offenses.

---

[6]Id.; Multiple Bill, 4/9/99; Motion for New Trial, 4/9/99; Motion to Reconsider Sentence, 4/9/99.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/9/99; Multiple Bill, 4/9/99.

[8]St. Rec. Vol. 1 of 7, Minutes of Multiple Bill Hearing, 8/9/99; Sentencing Minutes, 8/9/99; Reasons, 8/9/99.

[9]St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, p. 2, 2/14/01; St. Rec. Vol. 4 of 7, Appeal Brief, 00-KA-1239, 7/10/00.

On February 14, 2001, the Louisiana Fifth Circuit found no merit to the first three claims.[10] As to the fourth claim, the court determined that the only multiple bill in the record charged Muhammad as a third offender and was insufficient to form the basis of a fourth offender adjudication.[11] The court vacated the fourth offender status and the life sentence.[12] The matter was remanded to the state trial court to conduct a hearing regarding the charge as a <u>third</u> felony offender, unless the State filed another multiple bill properly charging Muhammad as a fourth offender.

Muhammad's subsequently filed pro se writ application to the Louisiana Supreme Court was denied without reasons on February 8, 2002.[13]

In the meantime, the State filed a new multiple offender bill on March 27, 2001.[14] Muhammad and his counsel filed two motions to quash the bill, alleging defects in the

---

[10] St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, 2/14/01.

[11] The State offered an affidavit to the appellate court which attested to the filing before the hearing of an amended multiple bill charging the fourth offender status. The court rejected the affidavit because no such bill was actually in the record before the court.

[12] Id., p. 18-19.

[13] St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2001-KO-984, 4/9/01; St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2001-KO-0984, 2/8/02.

[14] St. Rec. Vol. 1 of 7, Multiple Bill, 3/27/01.

6

prior felony convictions.[15] The motions were denied on April 27, 2001.[16] At a hearing held on May 18, 2001, the state trial court again determined that Muhammad was a fourth offender.[17] The court resentenced him to serve a life sentence on Count One without benefit of parole, probation or suspension of sentence.[18]

Muhammad was later granted an out-of-time appeal on October 30, 2001.[19] His counsel alleged on appeal that the trial court erred in finding Muhammad to be a fourth offender.  He argued that the multiple bill was not timely filed because Muhammad was released from custody prior to the filing of the bill.  Alternatively, counsel argued that the State failed to meet its burden of proof on the three predicate offenses.[20] The Louisiana Fifth Circuit pretermitted ruling on these claims.  Instead, the court sua sponte found that the state trial court committed reversible error when it relied upon evidence presented at the first habitual offender hearing to support the sentence imposed.  The

---

[15]St. Rec. Vol. 1 of 7, Motion to Quash Multiple Offender Bill of Information, 4/6/01; Motion to Quash Multiple Bill, 4/26/01.

[16]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 5/18/01; Reasons for Sentencing, 5/21/01.

[17]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 5/18/01.

[18]Id.

[19]St. Rec. Vol. 2 of 7, Motion for Out of Time Appeal, 10/9/01 (granted 10/30/01).

[20]State v. Muhammad, 831 So.2d 358, 360 (La. App. 5th Cir. 2002); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 02-KA-338, p. 5, 10/16/02.

adjudication and sentence were vacated and the case was again remanded for further proceedings.

The state trial court held a third multiple offender hearing on December 17, 2002.[21] The court again denied Muhammad's motion to quash the multiple bill, which was based on the untimeliness of the proceeding.[22] The court also found Muhammad to be a fourth offender and sentenced him to life in prison on Count One without benefit of parole, probation or suspension of sentence.[23]

On appeal, Muhammad's counsel argued that the multiple bill was not timely filed because Muhammad had been released from custody before the proceeding and that the state trial court erred in denying the motion to quash.[24] The Louisiana Fifth Circuit reversed the multiple offender adjudication finding that Muhammad had been discharged from parole supervision on August 23, 2002, prior to the third hearing.[25] The court held that this fact rendered the multiple offender process untimely under Louisiana Supreme

---

[21]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 12/17/02.

[22]Id.; Motion to Quash Multiple Bill, 12/8/02.

[23]Id.; Reasons for Sentencing, 12/19/02.

[24]State v. Muhammad, 857 So.2d 1223, 1226 (La. App. 5th Cir. 2003); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, 9/30/03.

[25]Id.

8

Court precedent and further found that the trial court erred in denying the motion to quash the multiple bill. The appeal court reversed the adjudication and sentence.

The State thereafter filed a writ application with the Louisiana Supreme Court on October 29, 2003, arguing that the delays in the multiple offender proceeding were not caused by the State, nor were they prejudicial to the defendant.[26] The State urged reinstatement of the multiple offender adjudication and life sentence. On January 6, 2004, the supreme court permitted briefing on the claims.[27]

On May 25, 2004, the Louisiana Supreme Court reversed the Louisiana Fifth Circuit, and overruled its own prior precedent to the contrary, finding that Louisiana law did not have a bright line deadline by which a habitual offender proceeding must be filed or completed.[28] The court reinstated Muhammad's fourth offender adjudication and his life sentence. The matter was also remanded for the Louisiana Fifth Circuit to consider the pretermitted claims raised in Muhammad's prior out-of-time appeal.

In reviewing those claims on remand, the Louisiana Fifth Circuit found that there was sufficient evidence to support the multiple offender adjudication as to only two of

---

[26] St. Rec. Vol. 2 of 7, La. S. Ct. Writ Application, 03-K-2991, 10/29/03.

[27] State v. Muhammad, 864 So.2d 612 (La. 2004); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2003-K-2991, 1/16/04.

[28] State v. Muhammad, 875 So.2d 45 (La. 2004); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 03-K-2991, 5/25/04.

the three predicate offenses.[29] The court also found that other errors patent on the record made by the trial court in that proceeding were harmless error that did not require reversal. The court therefore amended the multiple offender adjudication to that of third offender and affirmed the life sentence.

Muhammad's subsequent writ application to the Louisiana Supreme Court and his related request for reconsideration were denied without reasons on January 7, 2005 and April 21, 2005, respectively.[30]

Based upon a generous reading of the record, Muhammad's conviction became final 90 days later, on July 20, 2005, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[29]State v. Muhammad, 880 So.2d 29, 35 (La. App. 5th Cir. 2004); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, p. 9, 6/29/04.

[30]State v. Muhammad, 891 So.2d 669 (La. 2005); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2004-KO-2082, 1/7/05; State v. Muhammad, 899 So.2d 554 (La. 2005); La. S. Ct. Order, 2004-KO-2082, 4/21/05.

## II.  FEDERAL HABEAS PETITION

On March 13, 2006, Muhammad filed a petition for federal habeas corpus relief seeking relief on the following grounds:[31] (1) The trial court erred when it failed to suppress the physical evidence seized and defendant's statements made incident to an illegal seizure and arrest. (2) The State was allowed to introduce "other crimes" evidence without proper notice. (3) The evidence was insufficient to support the conviction because the State failed to prove that the defendant was not authorized to use the credit card accounts. (4) The trial court erred in finding him to be a multiple offender because of unreasonable delay by the State, Louisiana's habitual offender statute is unconstitutionally vague for failure to include a time limit for filing and completing the habitual offender proceeding, insufficient evidence to support the adjudication as a third offender and errors patent on the record.

The State filed a response in opposition to Muhammad's petition alleging that Muhammad has failed to exhaust state court remedies as to one argument in support of his fourth claim.[32] Specifically, the State contends that Muhammad has not presented to any state court the claim that the Louisiana habitual offender statute is unconstitutionally vague. The State also represents that it is unable to determine whether the first three

---

[31]Rec. Doc. No. 1.

[32]Rec. Doc. No. 3.

claims, which were raised in Muhammad's first appeal, were exhausted because of the unavailability of the Louisiana Supreme Court record in Writ No. 01-KO-0984 due to Hurricane Katrina. In the alternative, the State argues that the claims are without merit.

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Muhammad's petition, which, for reasons discussed below, is deemed filed in this federal court on February 9, 2006.[34]

---

[33] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Muhammad's petition was filed by the clerk of court on March 13, 2006, when the filing fee was paid. Baker dated his signature on the petition on February 9, 2006. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues and the record reflects that Muhammad has not exhausted available state court proceedings as to all of the issues raised.

IV. EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Muhammad must fairly present the same claims and legal theories he urges in this federal court to the Louisiana Supreme Court. The State argues that Muhammad failed to do so with respect to the issue of the constitutionality of the Louisiana habitual offender statute.

This report sets out a detailed outline of Muhammad's claims presented to the state courts, as is discernable from the record presented. I have compared those claims and

legal theories to the ones raised in Muhammad's federal petition. Muhammad has not argued to the state courts, specifically the Louisiana Supreme Court, that the Louisiana habitual offender law as construed by the Louisiana Supreme Court in 2003 is unconstitutionally vague.

This issue arises apparently from the Louisiana Supreme Court's ruling on the State's 2003 writ application on the timeliness of the multiple bill proceeding against Muhammad. The State argued in that writ application that the multiple offender proceeding was not unnecessarily delayed nor prejudicial to Muhammad. The Louisiana Supreme Court reversed its prior holdings and held that there was no "bright line" time limitation in the statute for filing and completing multiple offender proceedings under Louisiana law. The constitutionality of the statute in light of the failure to include such a limitation was not raised or discussed. Muhammad also did not challenge the constitutionality of the statute in his subsequent appeal or the subsequent writ application to the Louisiana Supreme Court.

Muhammad therefore presents a new legal theory or claim challenging his multiple offender status that was not raised to the Louisiana Supreme Court. He has failed to exhaust available state court remedies. Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). The record discloses no good cause for Muhammad's failure to exhaust this claim and this court can find none from the record. Rhines v. Weber, 544

U.S. 269, 278 (2005). As discussed above, Muhammad unsuccessfully sought relief in the Louisiana Supreme Court after his third appeal and before pursuing federal habeas relief. He did not address the timeliness issue or the constitutionality of the statute in that writ application or the subsequent request for rehearing. There is no apparent good reason for his failure to do so before proceeding in this federal court.

Therefore, this mixed petition containing both exhausted and unexhausted claims should be dismissed without prejudice to require petitioner to complete exhaustion of state court remedies, unless he amends or resubmits the habeas petition to present only exhausted claims. Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose v. Lundy, 455 U.S. 509, 510 (1982)); Whitehead, 157 F.3d at 387.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Mustafa Muhammad for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies. In the alternative, if Muhammad dismisses or abandons the unexhausted claim, the matter should be remanded to me for consideration of the merits of his remaining claims.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   24th   day of August, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE