## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MUSTAFA MUHAMMAD**                           **CIVIL ACTION**

**VERSUS**                                      **NO.  06-1420**

**CORNEL H. HUBERT, WARDEN**                    **SECTION "R"(2)**


### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.   FEDERAL PROCEDURAL BACKGROUND

On March 13, 2006, Muhammad filed a petition for federal habeas corpus relief seeking relief on the following grounds:[2] (1) The trial court erred when it failed to suppress certain physical evidence and defendant's statements obtained in an illegal seizure and arrest. (2) The State was allowed to introduce "other crimes" evidence without proper notice. (3) The evidence was insufficient to support his conviction because the State failed to prove that the defendant was not authorized to use the subject credit card accounts. (4) The trial court erred in finding him a multiple offender on various grounds, including (a) unreasonable delay by the State, (b) Louisiana's habitual offender statute is unconstitutionally vague for failure to include a time limit for filing and completing the habitual offender proceeding, (c) insufficient evidence to support the adjudication as a third offender, and (d) errors patent on the record because no multiple bill was filed.

In its response, the State argues that Muhammad failed to exhaust state court remedies as to part (b) of his fourth claim. Alternatively, the State argues that the claims are without merit.[3] On August 24, 2006, I issued a report and recommendation in which I recommended that Muhammad's federal habeas corpus petition be dismissed without

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. No. 3.

prejudice for failure to exhaust state court remedies regarding his claim that Louisiana's habitual offender law is unconstitutionally vague.[4]

Muhammad did not file objections to the report, but instead filed a memorandum amending his petition to remove the unexhausted claim.[5] The court initially adopted my report and issued an order and judgment dismissing the petition.[6] On May 14, 2007, the district judge vacated its order and judgment and referred the matter to me for consideration of the claims[7] remaining after dismissal of the unexhausted claim.

II.   STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

Although my prior report contains a detailed recounting of the procedural history of the underlying state criminal proceedings, the relevant facts and history are repeated here for ease of reference.

Muhammad is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[8] He was charged in a bill of information in Jefferson Parish on April 29,

---

[4]Rec. Doc. No. 4.

[5]Rec. Doc. No. 5.

[6]Rec. Doc. Nos. 6, 7.

[7]Rec. Doc. No. 9.

[8]Rec. Doc. No. 1, Petition.

1998, with 17 counts of access device fraud.[9]   The Louisiana Fifth Circuit Court of

Appeal summarized the facts of the case as follows:

> Lieutenant Glenn Davis, the sole trial witness and a 31-year Jefferson Parish Sheriff's Office employee, was assigned to the New Orleans International Airport.  On April 7, 1998, he was in charge of a unit monitoring incoming and outgoing flights from drug-source cities.  That morning he received a call from Officer Beal, who was with the Dallas/Ft. Worth Airport unit, alerting him that two individuals were arriving on American Airlines flight 2036.  The two men were using the names "George Fisher" and "Christopher Greene."  They were flying from Los Angeles, a drug-source city.  Each man paid $694 for a one-way ticket.  They gave a fictitious telephone callback number.  After receiving the information, Lieutenant Davis and Agent Brocato watched passengers arrive from that flight.  Although Lieutenant Davis did not have a description of the men, he noticed two men acting suspiciously when they disembarked.  He later discovered these two men were flying under the names of "Greene" and "Fisher."
>
> Lieutenant Davis saw "Greene" walk across the concourse and stand against the wall across from the area where passengers were disembarking.  A few minutes later, defendant passed "Greene" and walked up the concourse toward the lobby.   "Greene" then walked behind defendant, keeping at a distance of approximately five feet.  The two men never made eye contact, nor did they give any indication they knew each other.  Nevertheless, it was obvious to Lieutenant Davis the men were together.
>
> After they reached the main ticket lobby and the escalators, defendant stopped and spoke to "Greene."  They walked together through the lobby while they conversed.  As they walked, defendant glanced nervously over his shoulder, appearing to be looking to see if someone were following him.  When the men passed the United Airlines ticket counter, Lieutenant Davis approached defendant, and Agent Brocato approached "Greene."
>
> Lieutenant Davis showed defendant his police photographic identification and asked the defendant if the officer could speak to him for a moment.  Defendant "readily agreed."  The officer first asked defendant where the flight originated and defendant responded it was from Los Angeles.  Lieutenant Davis then asked defendant if he had a ticket.  Defendant presented his ticket folder to the officer and his hands trembled.

---

[9]St. Rec. Vol. 1 of 7, Bill of Information, 4/29/98.

Lieutenant Davis noticed the ticket was in the name of "George Fisher" and that it was purchased with a credit card. He asked defendant if he purchased the ticket in this fashion. Defendant was "very, very nervous."

Defendant asked, "Is there a problem with the ticket? If so, I'll pay you for the ticket now." He attempted to hand the officer several hundred-dollar bills as payment. The officer told him that he was unaware of any problem with the ticket, returned his ticket to him, and asked him if he had any identification. The defendant said he had none, but shortly afterward, he did and produced a New Jersey driver's license in the name of "George Fisher," bearing defendant's photograph. The date of birth on the license was January 1, 1960.

Lieutenant Davis asked defendant his date of birth and defendant responded he was born on a different date - - April 1, 1960. The officer asked defendant if he was born on April Fool's Day and defendant agreed, stating he was kidded about that fact.

Next, the officer asked defendant for his address. Defendant's response did not match the address on the driver's license. Lieutenant Davis asked defendant if he would accompany the officer to the airport office and defendant agreed. When they arrived, Lieutenant Davis asked defendant if his real name was "George Fisher." Defendant told him his real name was "Hassan Muhammad." He told the officer he purchased the driver's license and the credit card, used to purchase the tickets, in Los Angeles. Defendant was then, arrested by Lieutenant Davis who advised him of his constitutional rights.

The officer conducted a search incidental to the arrest. He discovered a second driver's license in defendant's billfold - - a Pennsylvania license with defendant's photograph, in the name of "George Fisher." The birth date on the Pennsylvania license was April 1, 1958, different from the other two dates.

Defendant presented the officer with the MasterCard used to purchase the two tickets. The MasterCard number matched the number on the receipt for "Green's" and "Fisher's" plane tickets.

Lieutenant Davis also found a Discover "swipe card" or "fraud card." Such a card has no embossing on the front; it is used at such places as an ATM machine, where no identification is required. This card had a valid account number.

Defendant sat in front of the officer's desk at this time. Noticing a bulge in defendant's jacket pocket, Lieutenant Davis asked one of the other detectives to examine the bulge. The detective retrieved a beige cloth bag from the pocket that contained a stack of 15 Visa and MasterCard credit cards. Each card was in the name of "George Fisher." Each had a yellow sticker attached, with numbers indicating the expiration dates and the account balances. Lieutenant Davis determined, from his investigation, these were valid account numbers, the numbers had not been issued to "George Fisher," and defendant did not have

authorization to use these numbers. The officer also determined the cards were manufactured with a credit card press in Los Angeles by defendant and his associates. The prosecutor asked the officer if defendant told him that he, defendant, manufactured those cards. The officer answered that defendant told the Secret Service Officer in Lieutenant Davis's presence that defendant was there when they were manufactured. The cards were not issued by the respective companies; they were made by defendant and his associates.

During cross-examination, Lieutenant Davis testified he did not know whose accounts these were. Defense counsel asked him, "And you can't say to this jury that they did not give him authorization, can you?" The officer replied, "No. Sir."

State Record Volume 1 of 7, Fifth Circuit Opinion, 2000-KA-1239, p. 2-5, February 14, 2001; State v. Muhammad, 786 So.2d 985 (La. App. 5th Cir. 2001) (unpub.) (Table).

Muhammad was tried by a jury and found guilty on each of the 17 counts on March 18, 1999.[10] The state trial court denied Muhammad's motion for a new trial and to reconsider the sentence at a hearing held on April 9, 1999.[11] That same day, the state trial court sentenced him to serve concurrent two-year prison sentences on each count, with the two-year sentence on Count No. 17 to run consecutively to the other sentences.[12] The State also filed a multiple offender bill, charging Muhammad as a third offender.[13]

On August 9, 1999, the state trial court determined that Muhammad was a fourth offender, based on the evidence presented at the hearing, and resentenced him on Count

_____

[10]St. Rec. Vol. 1 of 7, Trial Minutes (2 pages), 3/18/99; Jury Verdict (9 pages), 3/18/99.

[11]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/9/99; Motion for New Trial, 4/9/99; Motion to Reconsider Sentence, 4/9/99.

[12]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/9/99.

[13]Id.; St. Rec. Vol. 1 of 7, Multiple Bill, 4/9/99.

No. 1 to serve a life sentence, consecutive to the sentences on the other counts and without benefit of parole, probation or suspension of sentence.[14]

On appeal, the Louisiana Fifth Circuit Court of Appeal affirmed Muhammad's conviction and vacated the <u>fourth</u> offender adjudication.[15]  The court found that the only multiple bill actually filed into the record charged Muhammad as a <u>third</u> offender and was insufficient to charge him as a fourth offender.

The court remanded the matter to the state trial court to conduct a hearing regarding the charge as a <u>third</u> felony offender, unless the State filed another multiple bill properly charging Muhammad as a fourth offender.  Muhammad's subsequently filed pro se writ application to the Louisiana Supreme Court was denied without reasons on February 8, 2002.[16]

In the meantime, the State filed a new multiple offender bill on March 27, 2001.[17] The state trial court denied Muhammad's two motions to quash the bill on April 27,

---

[14]St. Rec. Vol. 1 of 7, Minutes of Multiple Bill Hearing, 8/9/99; Sentencing Minutes, 8/9/99; Reasons, 8/9/99.

[15]St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, 2/14/01.

[16]St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2001-KO-984, 4/9/01; St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2001-KO-0984, 2/8/02.  The State could not present a copy of Muhammad's writ application because of the unavailability of the Louisiana Supreme Court record due to Hurricane Katrina.

[17]St. Rec. Vol. 1 of 7, Multiple Bill, 3/27/01.

2001.[18]  On May 18, 2001, the state trial court again determined that Muhammad was a fourth offender and resentenced him to serve a life sentence on Count No. 1 without benefit of parole, probation or suspension of sentence.[19]

Muhammad was later granted an out-of-time appeal on October 30, 2001.[20]  His counsel alleged on appeal that the trial court erred in finding Muhammad to be a fourth offender because the amended multiple bill was not timely filed.  Alternatively, counsel argued that the State failed to meet its burden of proof on the three predicate offenses.[21]

The Louisiana Fifth Circuit pretermitted ruling on these claims.  Instead, the court sua sponte found that the state trial court committed reversible error when it relied upon evidence presented at the first habitual offender hearing to support the sentence imposed. The court again vacated the adjudication and sentence and remanded the case for further proceedings.

---

[18]St. Rec. Vol. 1 of 7, Motion to Quash Multiple Offender Bill of Information, 4/6/01; Motion to Quash Multiple Bill, 4/26/01; St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 5/18/01; Reasons for Sentencing, 5/21/01.

[19]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 5/18/01.

[20]St. Rec. Vol. 2 of 7, Motion for Out of Time Appeal, 10/9/01 (granted 10/30/01).

[21]State v. Muhammad, 831 So.2d 358, 360 (La. App. 5th Cir. 2002); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 02-KA-338, p. 5, 10/16/02.

The state trial court held a third multiple offender hearing on December 17, 2002.[22] The court again denied Muhammad's motion to quash the multiple bill, which was based on the untimeliness of the proceeding.[23]  The court also found Muhammad to be a fourth offender and sentenced him to life in prison on Count No. 1 without benefit of parole, probation or suspension of sentence.[24]

On appeal, the Louisiana Fifth Circuit reversed the multiple offender adjudication, finding that Muhammad had been discharged from parole supervision on August 23, 2002, prior to the third hearing, which rendered the process untimely under Louisiana Supreme Court precedent.[25]  The State filed a writ application with the Louisiana Supreme Court on October 29, 2003, arguing that the delays in the multiple offender proceeding were not caused by the State, nor were they prejudicial to the defendant.[26] On January 6, 2004, the Louisiana Supreme Court permitted briefing on the claims.[27]

---

[22]St. Rec. Vol. 2 of 7, Minutes of Multiple Bill Hearing, 12/17/02.

[23]Id.; Motion to Quash Multiple Bill, 12/8/02.

[24]Id.; Reasons for Sentencing, 12/19/02.

[25]State v. Muhammad, 857 So.2d 1223, 1226 (La. App. 5th Cir. 2003); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, 9/30/03.

[26]St. Rec. Vol. 2 of 7, La. S. Ct. Writ Application, 03-K-2991, 10/29/03.

[27]State v. Muhammad, 864 So.2d 612 (La. 2004); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2003-K-2991, 1/16/04.

On May 25, 2004, the Louisiana Supreme Court reversed the Louisiana Fifth Circuit and overruled its own prior precedent to the contrary, finding that Louisiana law did not have a bright line deadline by which a habitual offender proceeding must be filed or completed.[28]  The court reinstated Muhammad's fourth offender adjudication and his life sentence as to Count No. 1.  The matter was also remanded to the Louisiana Fifth Circuit to consider the pretermitted claims raised in Muhammad's prior out-of-time appeal.

In reviewing those claims on remand, the Louisiana Fifth Circuit found that the evidence was sufficient to support the multiple offender adjudication as to only two of the three predicate offenses.[29]  The court also found that the multiple bill had been filed on March 27, 2001, contrary to Muhammad's suggestion that it had not been.  Finally, the court determined that another error patent on the record made by the trial court during the multiple offender proceedings regarding notice of constitutional rights was harmless error that did not require reversal.  The court therefore amended the multiple offender adjudication to that of third offender and affirmed the life sentence.

---

[28]State v. Muhammad, 875 So.2d 45 (La. 2004); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 03-K-2991, 5/25/04.

[29]State v. Muhammad, 880 So.2d 29, 35 (La. App. 5th Cir. 2004); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, p. 9, 6/29/04.

Muhammad's subsequent writ application to the Louisiana Supreme Court and his related request for reconsideration were denied without reasons on January 7, 2005 and April 21, 2005, respectively.[30]

Based upon a generous reading of the record, Muhammad's conviction became final 90 days later, on July 20, 2005, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

III.   FEDERAL HABEAS PETITION

Considering Muhammad's amended petition dismissing his unexhausted claim, he seeks federal habeas corpus relief on the following grounds:[31] (1) The trial court erred when it failed to suppress certain physical evidence and defendant's statements obtained in an illegal seizure and arrest. (2) The State was allowed to introduce "other crimes" evidence without proper notice. (3) The evidence was insufficient to support his conviction because the State failed to prove that the defendant was not authorized to use

---

[30]State v. Muhammad, 891 So.2d 669 (La. 2005); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2004-KO-2082, 1/7/05; State v. Muhammad, 899 So.2d 554 (La. 2005); La. S. Ct. Order, 2004-KO-2082, 4/21/05.

[31]Rec. Doc. No. 1.

11

the subject credit card accounts. (4) The trial court erred in finding him a multiple offender on various grounds, including (a) unreasonable delay by the State, (b) insufficient evidence to support the adjudication as a third offender and (c) errors patent on the record.

In its opposition to the original petition, the State argued that these claims do not warrant federal review and are otherwise without merit.[32]  The State did not respond separately to the amended petition.

## IV.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[32]Rec. Doc. No. 3.

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Muhammad's petition as amended, which, for reasons discussed below, is deemed filed in this federal court on February 9, 2006.[34]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As directed by the court on remand, I will address the substance of the remaining claims.

V.    STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the date of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Muhammad's petition was filed by the clerk of court on March 13, 2006, when the filing fee was paid. Muhammad dated his signature on the petition on February 9, 2006. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

13

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.   28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"   Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   EVIDENCE FROM SEARCH AND SEIZURE

Muhammad argues that the state trial court should have suppressed physical

evidence and his statements taken at the airport on grounds that his search and arrest

were illegal and in violation of his Fourth Amendment rights.  The availability of federal

habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly

limited by the United States Supreme Court's decision in <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

In <u>Stone</u>, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Id</u>. at 494. A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" <u>Davis v. Blackburn</u>, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. <u>Stone</u>, 428 U.S. at 494-95 n.37; <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. <u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980); <u>Christian v. McKaskle</u>, 731 F.2d 1196, 1199 (5th Cir. 1984). The bar of <u>Stone v. Powell</u> applies despite any state trial court error in deciding the merits of

16

petitioner's Fourth Amendment claim.  Andrews v. Collins, 21 F.3d 612, 631-32 (5th Cir. 1994); Christian, 731 F.2d at 1199 n.1; Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

The record indicates that Muhammad's counsel filed motions to suppress evidence, the confession and the identification on October 8, 1998 and again on October 9, 1998.[35]  At an evidentiary hearing held on February 12, 1999, at which testimony was received, the state trial court denied the motions.[36]  Muhammad also raised the issue on appeal.  The Louisiana Fifth Circuit exhaustively examined his Fourth Amendment claim and found that his detention and arrest were legal and found no basis to suppress the evidence.[37]  Muhammad's subsequent writ application to the Louisiana Supreme Court was denied.

After reviewing the record, I find that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  Andrews, 21 F.3d at 631.  The State provided Muhammad, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully

---

[35]St. Rec. Vol. 1 of 7, Motion to Suppress Confession, 10/8/98; Motion to Suppress Evidence, 10/8/98; Motion to Suppress Evidence of Identification, 10/8/98; Defense Omnibus Motions, 10/9/98.

[36]St. Rec. Vol. 1 of 7, Minutes of Motion Hearing, 2/12/99; St. Rec. Vol. 3 of 7, Transcript of Motion to Suppress, 2/12/99.

[37]St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, 2/14/01.

and fairly.  The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the Stone v. Powell bar to federal review.  Janecka v. Cockrell, 301 F.3d 316, 320-21 (5th Cir. 2002).  Accordingly, Stone v. Powell bars review of this claim.  Id.; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994).  This claim for federal habeas relief must be dismissed.

VII.   OTHER CRIMES EVIDENCE

Muhammad alleges that he was denied a fair trial when the State introduced "other crimes" evidence or evidence of other bad acts at trial without giving him proper notice under La. Code Evid. art. 404(B).  Specifically, he alleges that on the morning of trial, the State announced its intent to introduce evidence that Muhammad had been in New Orleans two weeks prior to his arrest and had used other fraudulent credit cards to purchase goods at that time.

At trial, the State also presented testimony from Lieutenant Glenn Davis that, according to Muhammad's own testimony, the cards were manufactured by Muhammad and his associates in California.  The state trial court overruled Muhammad's objections before and during trial, except that the court would not allow the State to refer to use of the cards to make other purchases not charged as a crime.[38]

---

[38]St. Rec. Vol. 4 of 7, Trial Transcript, pp. 4-10, 33-35, 3/18/99.

Muhammad raised this claim on direct appeal.  The Louisiana Fifth Circuit found that the evidence was not "other crimes" evidence.[39]  Instead, the appellate court held that the testimony regarding the manufacture of the cards was an integral part of the charged offense, which required proof of unauthorized possession and intent to defraud.  This was the last reasoned decision on the issue because the Louisiana Supreme Court denied Muhammad's subsequent writ application without reasons.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

This issue presents a mixed question of law and fact.  Dickson v. Sullivan, 849 F.2d 403, 405-06 (9th Cir. 1988).  Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

Habeas corpus review is, however, limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  Burgett v. State of Texas, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation

---

[39]St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, 2/14/01.

renders the criminal proceeding fundamentally unfair.  <u>Lisenba v. People of the State of</u> <u>California</u>, 314 U.S. 219, 236-37 (1941); <u>Peters v. Whitley</u>, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

As a preliminary matter, Muhammad has not alleged that the admission of the testimonial evidence was improper.  Instead, he argues only that the lack of notice rendered him unable adequately to respond to the testimony.  The record indicates, however, that the State gave notice to Muhammad's counsel on the morning of trial of its intent to introduce Muhammad's statement at trial, which included information about his true name, that he had purchased the credit cards in Los Angeles and the he was previously in New Orleans with manufactured credit cards.[40]  The record shows that the statement had been released to Muhammad's counsel during pretrial discovery.  It was addressed and discussed at the motion to suppress.  Counsel also had an opportunity to cross-examine Lieutenant Davis fully at trial.  Muhammad has not shown any prejudice to his defense due to any delay in receiving the notice on the morning of trial.

Furthermore, the testimonial evidence referenced by Muhammad was admissible under Louisiana law.  In <u>State v. Prieur</u>, 277 So.2d 126 (La. 1973), the Louisiana

---

[40]St. Rec. Vol. 4 of 7, Trial Transcript, p. 4-5, 3/18/99.

Supreme Court held that evidence of other acts of misconduct is <u>generally</u> not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  <u>See also</u> La. Code Evid. art. 404(B)(1); <u>State v. Jackson</u>, 625 So.2d 146, 148 (La. 1993).  Under Louisiana law, to constitute impermissible other crimes evidence, the evidence must unambiguously implicate the defendant in another crime.  <u>State v. Edwards</u>, 406 So.2d 1331, 1349 (La. 1981); <u>State v. Holmes</u>, 841 So.2d 80 (La. App. 4th Cir. 2003).

In this case, the state courts resolved that the evidence arising from Muhammad's own statement, as Lieutenant Davis testified, formed a part of the elements of the offense of possession of fraudulent access devices.  As such, the evidence did not fit the definition of "other crimes evidence" under Louisiana law.  The record reflects that the evidence was not introduced to impugn Muhammad's character or depict him as a bad man.  Instead, the testimony was presented to establish the sequence of events, essential to the charged offense, including how he came into possession of the access devices and his fraudulent intent, as inseparable parts of the whole crime.  <u>See</u> <u>Robinson v. Whitley</u>, 2 F.3d 562, 566-67 (5th Cir. 1993) (citing <u>State v. Edwards</u>, 406 So.2d at 1350-51 and <u>State v. Guillory</u>, 201 La. 52, 9 So.2d 450 (La. 1942)).

Muhammad has not demonstrated in the instant case that the testimony constituted other crimes evidence which could have rendered his trial unfair.  Because Muhammad has not demonstrated an error in the admission of the evidence, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial.  Robinson, 2 F.3d at 567; Neal, 141 F.3d at 214.  The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Muhammad's claim is without merit.

## VIII.   INSUFFICIENT EVIDENCE

Muhammad alleges that the State failed to establish that he lacked authorization to use the credit cards and that the cards had been issued to another person.  Counsel raised this issue at trial at the close of evidence and after the defense rested without calling any witnesses.[41]  The state trial court denied the motion, suggesting that the motion should be brought post-verdict.

Counsel raised the issue again on direct appeal.  In reliance on the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law, the Louisiana Fifth Circuit held that the State could use circumstantial evidence to prove Muhammad's guilt and that the evidence introduced at trial, including Muhammad's own statements,

---

[41]St. Rec. Vol. 4 of 7, Trial Transcript, pp. 47-49, 3/18/99.

was sufficient for the jury to conclude Muhammad's guilt beyond a reasonable doubt. This was the last reasoned opinion on this issue.

A claim of insufficient evidence presents a mixed question of law and fact. Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in Jackson, 443 U.S. at 319, requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).

Muhammad was charged and convicted of 17 counts of access device fraud, by possessing them with intent to defraud, in violation of La. Rev. Stat. §14:70.4, which provides in relevant part that "[n]o person shall without authorization and with the intent to defraud possess an access device issued to another person." La. Rev. Stat. § 14:70.4(B). The statute further states that an "'access device' is a person's social security number, driver's license number, birth date, mother's maiden name, checking account numbers, savings account numbers, personal identification numbers, electronic

identification numbers, digital signatures, or other means of account access that can be used to obtain anything of value."  La. Rev. Stat. § 14:70.4(D)(1) .  A "counterfeit access device" is one which is fictitious, altered or forged.  La. Rev. Stat. § 14:70.4(D)(2).

In this case, the Louisiana Fifth Circuit determined that, to convict Muhammad, the State had to prove: (1) he possessed an access device issued to another person; (2) the possession was without authorization; and (3) the possession was with intent to defraud.[42]  Louisiana law allows a crime to be proven by circumstantial evidence.[43]

As noted by the state appellate court, Muhammad does not challenge the fact that the items were access devices or that he was in possession of them.  He only alleges that the State failed to prove that he was not authorized and that the cards were issued to another person.

The evidence at trial showed that Muhammad traveled from Los Angeles to New Orleans using an airline ticket issued in the name "George Fisher" and paid for by credit

---

[42]St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 2000-KA-1239, 2/14/01.

[43]"The rule as to circumstantial evidence is:  assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court should not apply this state law, "reasonable hypothesis" standard, but must apply the Jackson v. Virginia standard of review and that of the AEDPA.  Gilley, 968 F.2d at 467 (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).  "This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . .  Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208.

card.[44]  As identification, Muhammad showed Lieutenant Davis a New Jersey driver's license under the name George Fisher.[45]  Muhammad gave the officer a birth date of April 1, 1960, but the license indicated January 1, 1960 as the birth date.[46]  Muhammad also gave the officer an address different from that appearing on the license.[47]  Muhammad also carried with him a Pennsylvania driver's license issued in the name George Fisher and indicating a birth date of April 1, 1958.[48]  Muhammad had in his possession a Master Card which was used to purchase the airline ticket, a Discover Card, and a cloth bag containing 15 other Visa and Master Card credit cards.[49]  All of the cards were in the name George Fisher.[50]

During questioning, Muhammad admitted that he was not George Fisher.[51]  He reportedly told Lieutenant Davis that he "purchased the driver's license and the credit

---

[44]St. Rec. Vol. 4 of 7, Trial Transcript, pp. 26-27, 3/18/99.

[45]Id., at p. 28.

[46]Id., at pp. 28-29.

[47]Id., at p. 29.

[48]Id.

[49]Id., pp. 30, 31.

[50]Id., at pp. 32-33.

[51]Id., at p. 30.

card which I purchased these tickets with, on the street in Los Angeles."[52]  Muhammad later admitted to Lieutenant Davis that he was present when the cards were manufactured by his associates.[53]  Each card had an actual, valid account number, which did not belong to George Fisher or Muhammad, and the cards had not been issued by the respective card companies.[54]  Lieutenant Davis could not identify who the account numbers belonged to, nor had he spoken with any of the account holders to determine whether they had authorized Muhammad to possess the cards.[55]  He testified, instead, that through the investigation, the officers assigned to the case were able to determine that Muhammad did not have authorization.[56]

Based on the testimony and evidence submitted by the State, Muhammad admitted that he was not the person to whom the credit cards were issued and that he was present when the cards were manufactured.  Lieutenant Davis testified that the investigation established that Muhammad was not authorized to use the account numbers indicated on the manufactured cards bearing a name which was not his name, nor was it the name assigned to the account numbers of the cards.

---

[52]Id.

[53]Id., at p. 35.

[54]Id., at pp. 35-36, 45.

[55]Id., at pp. 38-39.

[56]Id., at pp. 44-45.

The record demonstrates that, taken in the light most favorable to the prosecution, the evidence was sufficient for a reasonable fact finder to resolve that Muhammad purchased, used and was in possession of counterfeit access devices with intent to defraud.  The state courts' denial of relief was not contrary to, or an unreasonable application of, <u>Jackson</u>.  Muhammad is not entitled to federal habeas corpus relief on this ground.

## IX.   ERRONEOUS HABITUAL OFFENDER ADJUDICATION

Muhammad alleges that the state trial court erred in finding him a multiple offender because of undue delay in filing the amended multiple bill, insufficient evidence to support the adjudication, and an error patent on the record in that the multiple bill was never filed.

### A.   UNDUE DELAY

Muhammad alleges that the multiple bill was not timely filed and that the multiple offender proceedings were untimely, which left the state court without jurisdiction to find a multiple offender.  Muhammad and his counsel raised this issue on appeal from the second and third multiple offender proceedings.  The Louisiana Fifth Circuit resolved that the multiple bill was timely filed and that there was no bad faith because any delay was caused by the "movement of defendant's case through the appellate process."[57]

---

[57]<u>State v. Muhammad</u>, 857 So.2d at 1226; St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, 9/30/03.

Nevertheless, relying on prior Louisiana Supreme Court precedent in <u>State ex rel. Glynn v. Blackburn</u>, 485 So.2d 926 (La. 1986), the court reversed the multiple offender adjudication because the multiple offender process was not completed before the sentence on the underlying felony was satisfied.

The Louisiana Supreme Court on review of the State's writ application determined that the Louisiana Habitual Offender Statute, La. Rev. Stat. § 15:529.1, did not contain a prescriptive period for completion of the multiple offender proceedings.[58]  The court also considered that it had previously held that the statute as written contemplated that a multiple bill must be filed within a reasonable time to be determined on the facts and circumstances of each case based on speedy trial concepts.[59]  The court therefore overruled its prior precedent to the contrary and held that there was no reason for its jurisprudence to create a bright line deadline by which to complete the multiple offender proceeding, when the legislature had not done so in the statute.

On completing its review, the court held that the State timely filed the multiple bill and that Muhammad had made no showing of bad faith in the State's initiation of the proceedings.  The court also held that there had been no inordinate delay in completing the proceedings under the circumstances of the case.  The appellate delays were not

---

[58]<u>State v. Muhammad</u>, 875 So.2d at 52; St. Rec. Vol. 2 of 7, La. S. Ct. Order, 03-K-2991, 5/25/04.

[59]<u>Id</u>., at 54-55.

abusive and could be attributed to both the State and the defense.  Muhammad was on notice and knew from the time of his original sentence that the State was pursuing a multiple bill.  The court also noted that Muhammad had not been released from custody before the State's filing of the multiple bill or completion of the proceedings against him.

The Louisiana Supreme Court found that the timing of the filing of the multiple bill and the timing of the completion of the proceedings were sufficient under state law. The sufficiency of a state court bill of information or indictment will not be reviewed under Section 2254, unless it can be shown that it so defective that it deprives the convicting court of jurisdiction.  McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994).  If the highest state court has found the bill of information sufficient under state law, a federal court need not address the issue.  Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  The Louisiana Supreme Court has so ruled.

Furthermore, the application and interpretation of Louisiana's habitual offender statute is an issue left to the Louisiana Supreme Court.  A state's failure to follow its own sentencing procedures is not reviewable through federal habeas corpus.  Joseph v. Butler, 838 F.2d 786, 789 n.2 (5th Cir. 1988); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987).  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).

Instead, this court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair.  Lisenba, 314 U.S. at 236-37; Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).   A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.  Id.; Peters, 942 F.2d at 940.

As the basis for his challenge before this court, Muhammad alleges that his proceedings were unfair because the State knew from the outset that it had insufficient evidence to pursue the multiple bill.  The sufficiency of the evidence will be addressed later in this report.  Muhammad has otherwise failed to allege a due process violation arising from the timing of the multiple offender proceedings against him or the lack of a prescriptive period in the statute itself.

His assertion that Louisiana should have a time limit on such prosecutions fails to state a cognizable federal habeas corpus claims.  "The Due Process Clause does not, . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused."  Parke v. Raley, 506 U.S. 20, 32 (1992) (quoting Medina v. California, 505 U.S. 437, 451 (1992)).  Enhancement proceedings are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications.  Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987).

Muhammad has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation, and my research has located none.  Claims that a state court improperly applied state law do not constitute an independent basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  For the foregoing reasons, Muhammad is not entitled to relief on this claim.  The denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.

B.    INSUFFICIENT EVIDENCE

Muhammad alleges that the State had insufficient evidence to prove that he was a third felony offender.  He claims that the State relied on an incomplete record of his bank robbery conviction in United States District Court for the Eastern District of California in 1989.[60]  He alleges that the record failed to prove that he was represented by counsel, or waived his right thereto, at the time of the taking of the plea.

Muhammad challenged the sufficiency of the evidence at the multiple bill hearing in his 2001 out-of-time appeal to the Louisiana Fifth Circuit.  At that time, he challenged the evidence used to prove that he was a fourth offender.  The Louisiana Fifth Circuit considered that claim on remand in 2004 and resolved that the evidence was only sufficient to establish Muhammad to be a third offender.

---

[60]The State charged this conviction as occurring on May 1, 1990.  However, at the multiple bill hearing, the State introduced records reflecting that the plea was taken in October 1989. For consistency with the state records and Muhammad's pleadings, I too will refer to this as the 1989 conviction.

The multiple bill used at Muhammad's third multiple offender hearing charged three prior convictions:  (1) conviction on his plea of guilty to second degree burglary taken in Case No. 2273654-4, Department No. 6, Superior Court for the State of California, County of Fresno, on May 3, 1978; (2) conviction on his plea of guilty to robbery of a savings and loan taken in Case No. Cr-83-357-01 in the United States District Court for the Eastern District of California, on July 29, 1983; and (3) conviction on his plea of guilty to bank robbery taken in Case No. CRS-89-351-01, United States District Court for the Eastern District of California, on May 1, 1990 (referred to as "the 1989 conviction").[61]

Muhammad did not challenge the evidence in connection with the 1978 conviction.  He challenged both the 1983 and 1989 convictions on the basis of insufficient evidence of identification and lack of representation by counsel.  The Louisiana Fifth Circuit held that the State had failed to provide sufficient documentation from the plea in 1983 to establish that Muhammad was the same person and had been represented by counsel.  The court rejected this as a predicate offense.

The court further found that the evidence submitted in connection with the 1989 conviction, which Muhammad did not counter at the hearing, was sufficient.  Specifically, the court determined that the plea form, fingerprint card, social security

---

[61]State v. Muhammad, 857 So.2d 1223, 1226 (La. App. 5th Cir. 2003); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, 9/30/03; St. Rec. Vol. 1 of 7, Multiple Bill, 3/27/01.

number and the alias name were sufficient to establish that Muhammad was represented by counsel and was the same person who entered the guilty plea in 1989.  The court therefore deemed Muhammad to be a third offender and affirmed his life sentence as a third offender.  The Louisiana Supreme Court tacitly acquiesced in these findings when it denied relief on Muhammad's subsequent writ application, without detailed reasons.

As stated above, the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. at 319, applies to sufficiency of the evidence determinations and requires this court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  <u>Donahue</u>, 231 F.3d at 1004; <u>Gilley</u>, 968 F.2d at 467; <u>Guzman</u>, 934 F.2d at 82.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.  <u>State v. Shelton</u>, 621 So.2d 769 (La.1993); <u>State v. Staggers</u>, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (<u>citing</u> <u>State v. Davis</u>, 829 So.2d 554 (La. App. 5th Cir. 2002)); <u>State v. Warfield</u>, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction.  <u>State v. Staggers</u>, 2003 WL 22438958 at *6.  However, independent proof, such as matching

fingerprints and other vital information, is required to show that the defendant is the same person identified in those records.  State v. Walker, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), writ denied, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

State v. Shelton, 621 So.2d at 779 (footnotes omitted).

Muhammad seeks review of the state courts' determination that he is a third multiple offender based only on his allegation that the evidence was insufficient in connection with the 1989 conviction for bank robbery.  He does not challenge the evidence related to the 1978 conviction.

As to the 1989 conviction, the State introduced the testimony of Virgil McKenzie, a fingerprint examiner for the Jefferson Parish Sheriff's Office.[62]  In connection with McKenzie's testimony, the State submitted four exhibits:[63] (1) the fingerprint card of prints taken on the day of the hearing; (2) the fingerprint card of prints taken on August 9, 1999 at the previous multiple bill hearing; (3) a copy of the reverse side of the underlying bill of information on which Muhammad's fingerprints appeared; and (4) certified copies of records from the 1989 conviction, including the arrest register, fingerprint card, the bill of indictment, the judgment including sentence,[64] the docket master, minute entries, the statement of defendant's constitutional rights[65] and a memo from counsel.

McKenzie testified at the hearing that the fingerprints on the certified records from the 1989 federal bank robbery case matched the prints taken from Muhammad on the day of the hearing and at the prior multiple bill hearing.[66]  McKenzie testified that, while the fingerprint card from the federal case contained descriptive information for a person

---

[62]St. Rec. Vol. 6 of 7, Multiple Bill Hearing Transcript, pp. 14-15, 12/17/02.

[63]Id., pp. 16-19, 26-32.

[64]Rec. Doc. No. 1, Attached at p. 40, Judgment Including Sentence Under the Sentencing Reform Act, CRS-89-357-01, U.S. Dist. Ct., E.D. Cal., 5/2/90.

[65]Id., p. 46-47.

[66]Id., pp. 16-18.

identified as Hassan Fateen Mustafa, the fingerprints matched those of Muhammad, and McKenzie was certain that Muhammad was the same person convicted in 1989.

Thus, the fingerprint evidence established that Muhammad was the person convicted in 1989 under the name Hassan Fateen Mustafa.  The documentary evidence presented to the state trial court, specifically the judgment including sentence, also established that Muhammad pleaded guilty in that case with counsel and did so with full knowledge of his constitutional rights.[67]

Muhammad did not establish at the hearing, and has not demonstrated in the instant case, any procedural irregularity in the prior case which would have required further proof, such as the need for a "perfect" Boykin transcript, from the State under Louisiana law.  The evidence, considered in the light most favorable to the prosecution, was sufficient for the state trial court to find that the prior felony conviction was appropriate as a basis to enhance his sentence under the habitual offender laws.

Furthermore, this court cannot now consider any alleged violations that may have occurred in the prior case.  The United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  Lackawanna County District Attorney v.

---

[67]Id., p. 29, 46-47; Rec. Doc. No. 1, Attached at p. 40, Judgment Including Sentence Under the Sentencing Reform Act, CRS-89-357-01, U.S. Dist. Ct., E.D. Cal., 5/2/90.

Coss, 532 U.S. 394, 400-401 (2001).   Therefore, Muhammad cannot challenge his current sentence in this court by claiming that his 1989 conviction was not constitutionally sound.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Jackson or any other Supreme Court precedent.  Muhammad is not entitled to federal habeas corpus relief on this claim.

C.      ERROR PATENT ON THE RECORD

Muhammad suggests that an error patent exists on the face of the record because no multiple bill was filed into the record, rendering invalid his adjudication as a multiple offender.  He did not brief this issue.

A review for errors patent on the record is a state law appellate procedure predicated on a state statute.  Ellison v. Day, 62 F.3d 396, 1995 WL 449674 at *1 (5th Cir. July 14, 1995) (Table, Text in Westlaw).  Muhammad received an errors patent review in the Louisiana Fifth Circuit, where he argued the same claim under state law.[68] The court found that there was no error because the record in fact contained a copy of the multiple bill filed by the State on March 27, 2001, which charged him as a fourth offender.  The court found he was not entitled to relief on this claim.

---

[68]State v. Muhammad, 857 So.2d at 1223; St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 03-KA-419, 9/30/03.

A matter of state law presents a federal habeas issue only if it involves a federal constitutional issue. <u>Smith v. McCotter</u>, 786 F.2d 697, 702-03 (5th Cir.1986). Muhammad has not alleged any such federal violation, and his other challenges to the multiple bill proceeding have been addressed elsewhere in this report.

In addition, his claim is factually unfounded. The record before this court contains a copy of the original multiple bill filed on April 9, 1999, and the second multiple bill filed on March 27, 2001.[69] Therefore, there is no error, constitutional or otherwise, apparent on the face of the record because the multiple bill was in fact filed with the state trial court.

Muhammad has failed to enunciate a constitutional violation or establish that the denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court precedent. The claim is without merit.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Mustafa Muhammad for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10)

---

[69] St. Rec. Vol. 1 of 7, Multiple Bill, 4/4/99; Multiple Bill, 3/27/01.

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __30th__ day of July, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE